UNITED DEFENSE GROUP, LLP
Eric Chase, CA SBN 148030
Summer McKeivier, CA SBN 230605
4181 Sunswept Drive, Ste. 100
Studio City, CA 91604
Telephone (818) 487-7400
Fax (818) 487-7414

Attorneys for Defendant
ANDREW SAMUEL HANSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT COURT OF CALIFORNIA

| UNITED STATES OF AMERICA, | : | CASE NO. 3:09-cr-000946-JSW |
|---|---|---|
| Plaintiff | : | DEFENDANT'S FINAL BRIEF |
| | : | HON. JEFFREY S. WHITE |
| ANDREW SAMUEL HANSON, | : | |
| | : | Hearing Date: May 13, 2010 |
| Defendant. | : | Time: 2:30 p.m. |

### I.   LOSS OF EXPECTION OF PRIVACY ARGUMENTS

The government has unnecessarily complicated the litigation of the Defendant's Motion to Suppress by what can only be called a "shotgun attack" on Mr. Hanson's reasonable expectation of privacy in the contents of his computer. Each of the grounds raised in the Government's Opposition was shown to be unquestionably fallacious and each argument has apparently been abandoned by the Government as none is defended, or even mentioned in the Sur-Reply. Now, the Sur-Reply raises completely new grounds in an equally unavailing attempt to show a loss of expectation of privacy.

In common with the initially raised justifications, the new arguments are unsupported by any border search case law and, if accepted, would undermine decades of jurisprudence on the Fourth Amendment generally and border searches specifically from the Supreme Court, through the Circuits and down to the District Courts that have chosen to write on the issue.

/

/

1  Perhaps the fundamental problem with all the various Government arguments for the loss
2  of expectation of privacy can be summarized by pointing out that each flies directly in the face of
3  ALL extended border search cases, cited by both parties, which rely on the basic principle that
4  searches justified by the border exception but separated by time and space from the border are a
5  **greater intrusion on an individual's reasonable expectation of privacy**.  The unnecessary
6  pages of briefing on these issues are unfortunate as this case should simply be analyzed by
7  answering two questions: 1) Is the act of conducting an off-site, forensic analysis of a computer,
8  days after its initial seizure by a customs officer, properly considered an extended border search?
9  2) If it is, was that second search supported by reasonable suspicion and conducted with
10 appropriate diligence? However, out of an abundance of caution, each of the Government's
11 novel attempts to expand border search jurisprudence is addressed.

**A.     Previously raised and apparently now abandoned**

    1. <u>It was the seizure that caused the loss of an expectation privacy</u>

The Government argued in its Opposition that, "Customs Officer Edwards had probable cause to seize Hanson's laptop on January 27, 2009, when he passed through customs upon his entry into the United States. At that point, Hanson lost any legitimate expectation of privacy in the laptop's contents." (Gov't Brief at 5.) It supported this argument that the seizure of the computer resulted in the loss of a reasonable expectation of privacy in its contents with the quotation of a portion of a sentence in *United States v. Jacobsen*, 466 U.S. 109, 121-122 (1984). Faced with the complete quote from the United States Supreme Court case the Government itself relied on, "Even when Government agents may lawfully seize [a package] **they must obtain a warrant to examine the contents of the package**," *United States v. Jacobsen*, 466 U.S. 109,114 (emphasis added), it is not surprising this argument has apparently now been abandoned.

    2. <u>No legitimate expectation of privacy in contraband</u>

Since, as pointed out in Defendant's Reply, the cases cited by the Government only applied to the contraband itself and not to packages that may contain contraband along with protected material, it is again not surprising to see this position abandoned.

/

**B.     Newly raised arguments in Sur-Reply**

<u>1.  The initial search caused the loss of an expectation of privacy</u>

Having abandoned the position that it was the *seizure* that caused the loss of Mr. Hanson's reasonable expectation of privacy in his computer, the Government has moved on to the position that it was the *search* that caused that loss.  However, every case the Government cited is a search incident to arrest case.  In each cited case, the police had properly seized and thoroughly searched the items but needed to take a second look at what they had already seen in order to: 1) compare evidence to another case involving the same defendant (*United States v. Johnson*, 820 F.2d 1065, 1072 (9th Cir. 1987)); 2) record the serial numbers on bills they had already seen (*United States v. Sanchez*, 337 Fed.Appx. 641, 642 (9th Cir. 2009)); 3) seize a cap that had already been inventoried among the other personal items an inmate brought with him to jail (*United States v. Turner*, 28 F.3d 981, 983 (9th Cir. 1994)); and 4) complete an inventory of a purse that had already been searched and all of its contents exposed to police incident to a lawful arrest (*United States v. Burnette*, 698 F.2d 1049 (9th Cir. 1983).)

As far as we have seen, no court has ever expanded the rationale of these cases outside the search incident to arrest context and certainly not to border searches. Likewise, in none of these cases did the police look inside a container that had not been previously opened and the entirety of its contents inventoried.  An examination of the facts and rationale behind the language of *Burnette*, the seminal case relied on by the Government, makes clear that it is utterly inapplicable to the instant case. In *Burnette*, the initial search of the appellant's purse, however "cursory" it was, had an effect that the Government cannot claim Officer Edwards' initial search had. The *Burnette* Court's language supplies the distinction as well as the justification for its holding:

> In the present case, [appellant] had been arrested and her purse lawfully searched incident to that arrest. The contents of the purse had been **fully exposed** to the police and, consequently, her expectation of privacy in the purse was necessarily reduced by a significant degree.

*Burnette, supra* at 1049. (Emphasis added)

To apply *Burnette's* holding in this case would require unloosing the rule entirely from its Fourth Amendment moorings, as it cannot be said that Officer Edwards' initial search, in which she viewed one questionable image, fully exposed the contents of Mr. Hanson's computer.

Contrary to the Government's suggestion otherwise, Mr. Hanson has not made a claim "identical" to that rejected by the Ninth Circuit in *Arnold*—that his computer was somehow different from a typical closed container because it could contain thousands of files. (Gov't Sur-Reply at 3.) Mr. Hanson instead posits that, regardless of the "character" of his computer, Officer Edwards' initial search of his laptop exposed to law enforcement's view but a minute fraction of its contents. Thus, Officer Edwards should have done exactly what was done in *Arnold*—get a warrant.

Further, imagine the effect that the suggested expansion of the *Burnette* rule would have in various contexts. As applied to border searches generally, agents, after taking their permissible look while at the border crossing itself, would be free to "detain" electronic devices and conduct further examinations whenever and wherever they pleased as justified solely because their "peek" "exposed the computer's contents to law enforcement." As applied to computers specifically, the result is even more absurd. Any police officer who, for whatever reason, arrested an individual whose computer (or even a cellphone) was displaying an image (which is a file's contents) could then conduct a full search of the device without any level of cause because the view of the file caused a loss of an expectation of privacy.

2. <u>The fact that the computer had not cleared customs caused the loss of an expectation of privacy 10 days later at a location away from the border.</u>

This issue is just slightly more complex to deal with because there are some cases that discuss the "clearing of customs" in the context of when a border search occurs. However, the Government's use in the context of this case is quite misleading. And again, an acceptance of this argument, which is also novel as applied to this case, would make irrelevant all the extended border search cases which focus on reasonable suspicion, time and distance, and diligent effort as the requirements for the additional invasion of privacy occasioned by searches separated in time and place from a border.

1    The Government first cites to an inapplicable statute, 19 U.S.C. §1499(a)(1), to create its
2    straw man about customs. That statute, related to the collection of duties and posting of bond for
3    such duties, by its terms, applies only to: "Imported merchandise that is required by law or
4    regulation to be inspected, examined, or appraised…" *Id.* There has never been any suggestion
5    that Mr. Hanson's computer was a piece of imported merchandise that is required by law to be
6    examined for the collection of duties or otherwise.

7    The Government next points to *United States v. Laich*, 2010 WL 259041 (E.D. Mich.
8    2010). It notes that the laptop there had cleared customs before its owner was called back by
9    customs agents, acting on a tip from an ICE agent. After pointing to that factual distinction from
10   this case, the Government suggests that that difference was the factual basis used by that court
11   for the determination that the seizure and later search were unlawful. However, the *Laich* Court's
12   only mention of the proceeding past customs is in its statement of facts. *Laich, supra* at *5. It
13   appears nowhere else in the opinion at all. It was not mentioned in Part A of the analysis, in
14   which the court reviewed "The Seizure of Laich's Laptop Computer and Subsequent Forensic
15   Search." *Laich, supra* at *8. Further, it did not rely on that fact in its alternative bases for
16   deciding that the seizure and later forensic search was unlawful—that the permanent seizure was
17   not supported by probable cause and that the subsequent forensic search was not conducted
18   pursuant to a warrant. *Laich, supra* at *13-14. In short, contrary to the Government's suggestion
19   in its Sur-Reply, whether an item has "cleared customs" is not the *vel non* of whether a person's
20   expectation of privacy in his containers is lowered.

21   The facts in the additional cases cited by the Government are wholly inapplicable as they
22   each apply to items shipped in or out of the United States and the cases only stand for the
23   proposition that those items can be searched, "…at the customs station closest to the final
24   destination of the goods." *United States v. Gaviria*, 805 F.2d 1108, 1113-1114 (2d Cir. 1986.)

25   The cases cited by the government are: *Gaviria* (after an initial search in Miami disclosed
26   nothing illegal, shipped by customs bonded carrier to their final destination in New York);
27   *United States v. Gallagher*, 557 F.2d 1041 (4th Cir. 197) (items shipped from point of entry in
28   Maryland via customs bonded carrier to final destination in Virgina); *United States v. Caminos*,

770 F.2d 361 (3rd Cir. 1985) (items shipped by customs bonded carrier from New York to Pittsburgh where it is first searched); *United States v. Abbouchi*, 502 F.3d 850, 856 (9th Cir. 2007) (outbound items placed in a sealed container by customs agents in Kentucky before being transported to final departure point in California where they were searched), and *United States v. Bareno-Burgos*, 739 F.Supp. 772 (E.D.N.Y. 1990) (items searched in New York though their final departure point to South America was Miami).

There are innumerable quotes in these cases that could have been selected that show that these cases are applicable only to situations where items have been entrusted to a carrier before being transported interstate attendant to the international shipment. We have selected one from the last case in the list.

> [O]nce a departing passenger has checked baggage through to a foreign destination, providing for its exclusive transport by common carrier **with no further personal involvement in its movements**, there is no greater intrusion on privacy or inconvenience caused by having the Customs inspection occur at the point where the bags are first surrendered than at the point where they will ultimately leave the United States.
>
> *Bareno-Burgos, supra* at 779, citing *United States v. Udofot*, 711 F.2d 831, 840 (8th Cir. 1983) (Emphasis added).

Lastly on this novel argument, the Government's requested vast expansion of the "clearing custom" rational would result in searches more offensive than pointed out above in their suggested "one search permits all searches" expansion.  Now, border agents wouldn't even need to take their "peek." They could simply seize random (or even all) computers from travelers, not "clear" them from customs and send them off for intrusive searches whenever or wherever the agents desired. This proposition, which is essentially that the Government may extend the border as it sees fit, surely fails.

### II. THERE WAS NO EXTENDED BORDER SEARCH BECAUSE THE SEARCHES OCCURRED AFTER THE FINDING OF SUSPECTED CONTRABAND AND THE SEIZURE OF THE DEFNDANT'S COMPUTER

Regardless of its citation to more inapplicable cases, the Government has failed to distinguish *Laich* or address its reasoning, that the permanent seizure of the defendant's computer had to be supported by probable cause, and that its subsequent forensic search should have been preceded by the issuance of a warrant. The seizure of the computer was the important

event in *Laich*, just as it was the important event in Mr. Hanson's case, and in each case, the important question is: after the authorities seized the computer, what possible reason could they have to conduct an intrusive search without first obtaining a warrant?

The Government's suggestion to the contrary in footnote 2 of its Sur-Reply, is indicative of its misunderstanding. That footnote refers to a sentence in the brief in which the Government suggests that the Court should reject Defendant's "misleading" claim that the border search exception "disappears" when an item is seized. The footnote goes on to state, "Of course, even if the Court were to hold otherwise, the relevant distinction is between a border search, requiring no suspicion, and an extended border search, requiring reasonable suspicion. *See Gaviria*, 805 F.2d at 1112." However, if this Court holds that the border exception no longer creates the *justification* for a further search once an item is seized as containing contraband, no further search can be conducted without a warrant supported by probable cause. The distinction the Government notes as relevant—that between a border search and an extended border search— only becomes "relevant" if this Court further holds that, even when the border search justification has ceased, Customs officials may nevertheless justify a warrantless search as an "extended border search". Neither *Gaviria,* nor any other case stands for that proposition.

In the time-and-place nomenclature of extended border search, the "time" delay in all previous extended border search cases has been occasioned by an individual's movement of his or her property away from the border either by personal action or employment of a common carrier. In none of the cases has the time delay been occasioned by the border agents' denial of an individual's possessory interest in his property, i.e. a seizure. As fully discussed in Defendant's Reply, the extended border search doctrine should not be expanded to this scenario because the justification of preventing entry of contraband items into the country has been accomplished. Rather, the Supreme Court's general Fourth Amendment rule of *Jacobsen* should be followed: "**Even when Government agents may lawfully seize [a package] they must obtain a warrant to examine the contents of the package**." *United States v. Jacobsen*, 466 U.S. 109, 114.

/

### III. THE REQUIREMENTS FOR AN EXTENDED BORDER SEARCH HAVE NOT BEEN MET

Even assuming, *arguendo*, that this case should be analyzed for compliance with the extended search doctrine, it does not meet the requirements for such a search.

**a. There was no reasonable suspicion or probable cause**

If this Court agrees with the Government that, because the Defendant is unable to aver facts that are particularly in the possession of his opposing party (e.g. Officer Edwards' training and experience), he is not entitled to an evidentiary hearing, then he requests strict adherence to the Government's position that only facts contained in the declarations may be considered.

i. <u>Officer Edwards relied on the image alone in making her decision to "detain" Mr. Hanson's computer.</u>

Though in her declaration she refers to other factors such as Mr. Hanson's nervousness, possession of male enhancement pills and condoms, she states that those factors led to her initial search, which is not complained of herein. After finding the image during that initial search, which she describes in her declaration, she states, "Based on this image, I decided that Mr. Hanson's computer should be detained for a more thorough forensic examination." (Edwards Dec. para. 4). While it may be true that Officer Edwards considered other factors, the record before this Court is that her decision to "detain" was based solely on the one image she saw.

ii. <u>Officer Edwards' Declaration omits facts which are indispensable to a finding of reasonable suspicion or probable cause.</u>

Officer Edwards' Declaration does not include any facts which support findings that many courts have found crucial in reaching determinations of either probable cause or reasonable suspicion in relying on agent's observations of suspected child pornography. *See*, e.g. *United States v. Hill*, 459 F.3d 966, 970-973 (9th Cir. 2006); *United States v. Smith*, 795 F.2d 841, 847-848 (9th Cir. 1986.) Specifically, there is no evidence from which a court could conclude:

    a) That Officer Edwards has any training or experience in identifying child pornography;

/

        b)       That Officer Edwards has any training or experience in making a determination of whether an exhibition of genitals is "lascivious."

        c)       That Officer Edwards, based on her training and experience (or otherwise), actually formed the opinion that the image was a "lascivious depiction" of the subject's genitals.

In fact, each case, and each excerpt from each case used by the Government in its reasonable suspicion analysis in its Opposition emphasizes the importance of an agent's training and experience in making a reasonable suspicion determination. We quote from the Government's brief directly:

> The reasonable suspicion determination depends on the totality of the circumstances, in light of **a trained officer's experience.** *Id.* (*citing United States v. Cortez*, 449 U.S. 411, 417 (1981) and *United States v. Sokolow*, 490 U.S. 1,8 (1989)). The purpose of this standard is to allow law enforcement officers to draw **on their own specialized training** to make inferences from and deductions about the cumulative information available to them. *United States v. Guzman-Padilla*, 573F.3d 865, 881 (9th Cir. 2009).

(Gov't Opposition P. 7, emphasis added).

Further, more importantly, and perhaps dispositive, is the utter want of any evidence whatsoever that Officer Edwards herself, based on whatever training and experience she may have had, made a determination that the image included a "lascivious exhibition of the genitals." In fact, her first description, contained in the report attached to her declaration, did not note whether the genitals were visible. In that report, the description was simply, "…an adolescent female, who was nude, covered in mud at an unknown beach." (Exh. 1 to Edwards Declaration at p. 4 (numbered 05/06 at the top)).  Therefore, if any inference is to be drawn, it is that Officer Edwards did not even consider whether there was a "lascivious exhibition of the genitals" before deciding to "detain" the computer. Certainly, there is no evidence from which a contrary inference might be made.

    iii.    <u>Officer Edwards' description of the image does not describe a lascivious exhibition of the genitals</u>

The *post hoc* description provided by Officer Edward's declaration made approximately one year, four months after her viewing of the image on Mr. Hanson's computer before

1  "detaining" it is as follows: "I came across an image of a completely naked girl standing on a
2  beach. The girl's body was covered in mud, facing the camera and smiling, and her genitals
3  were clearly visible." (Edwards Declaration ¶. 4).

4  She does continue on to describe an image she reviewed on Mr. Hanson's computer when
5  asked to do so in preparation for this Motion. However, she states that, though it is "consistent"
6  with the image she saw, because of the passage of time, she "…**cannot be certain this is the**
7  **same image** I saw on January 27, 2009..." (Edwards Declaration Para. 5, emphasis added). It is
8  disingenuous of the Government to offer to show the Court the picture she "**identified**" and
9  suggest that the Court could "…decide whether **this image gave the agent probable cause**, or
10 reasonable suspicion…" without indicating that the officer is not certain "this image" is the
11 picture she saw at the border. (Gov't Sur-Reply at 6, emphasis added).   The Defendant objects to
12 any evidence outside the Declaration of Officer Edwards, and especially to an image that she
13 cannot identify as the image in question for this Court. [1]

14 The Government's implication that the Ninth Circuit stands alone in holding that the *Dost*
15 factors are a "**mere** 'starting point,'" in making the lascivious depiction determination. (Gov't
16 Sur Reply at 6, Citing  *United States v. Banks*, 556 F.3d 967, 980,("mere" not in *Banks*)), is not
17 well taken.  All courts, including *Dost*, that have considered the *Dost* factors have said something
18 similar to the *Banks* quote. Even in its introduction to its now ubiquitous factors, the *Dost* court
19 itself stated, "…the trier of fact should look to the following factors**, among others that may be**
20 **relevant in the particular case**." *Dost* at 832. (Emphasis added).  In *Banks*, there was one other
21 factor that no court could have anticipated in setting general guidelines for judging the
22 lasciviousness of a depiction.  The *Banks* defendant had depicted himself masturbating an infant.
23 Of course, the *Banks* court had no trouble bypassing the *Dost* factors and simply concluding that
24 masturbation was lascivious.
25 /

---

[1] Defense counsel has not been provided a copy of the "similar image", as is appropriate under the Adam Walsh Act, and we have not had an opportunity to make the necessary arrangements for its review since the Government made the offer in its Sur Reply.

1    In fact, the Ninth Circuit is consistent with all other circuits in using the *Dost* factors to
2    analyze an image similar to the one at issue here where it is "photographic elements" (e.g. focal
3    point, sexually indicative location and clothing etc.) that cause an image to be sexually
4    suggestive and therefore constitute a lascivious exhibition. *See*, *United States v. Hill*, 459 F.3d
5    966, 972-973 (9th Cir. 2006). "Although we appreciate the district court's careful analysis and
6    critique of *Dost*, we do not think it necessary to adopt a new test or to deny the utility of *Dost* in
7    the context of this case." *Hill* at 972.

8    As should have been equally obvious to the Government, there is no factor even remotely
9    similar to the one in *Banks* present in Officer Edwards' description. The Government has not,
10   and frankly could not, point to any of the photographic element factors from *Dost* or *Hill*[2] (as
11   fully set forth in Defendant's Reply) that would indicate that Officer Edwards' description is of a
12   lascivious exhibition of genitals.  So, while it may be correct that *Dost* is a "starting point",
13   making that observation is meaningless without offering a different path to their suggested
14   "ending point"—that Officer Edwards' description is of a "lascivious exhibition of genitals".

15           iv.     There is no evidence of diligent effort in conducting the forensic examination

16           As previously noted in Defendant's Reply, it appears from Agent Shay's reports that the
17   forensic examination took ten days longer than necessary to complete. The examination itself
18   took less than one day to complete. There is no evidence offered to justify this delay.
19   /
20   /
21   /

---

[2] In *Hill* it was "…provocatively and unnaturally dressed in light of the photograph's setting [and] sexually suggestive poses." *Hill* at 972-973.

## IV. CONCLUSION

This is precisely the type of case that highlights the need for the procedures followed in the majority of cases, such as *Arnold,* where agents obtain a search warrant before intruding on a person's reasonable expectation of privacy by depriving him of his property through seizure and then conducting an intrusive search of that property. Even if this court concludes that such an intrusion may be undertaken without a warrant upon reasonable suspicion, a finding that reasonable suspicion existed in this case would mean that any depiction of a naked minor, without regard to the lasciviousness of the exhibition, would always be a sufficient justification.

Respectfully Submitted,

UNITED DEFENSE GROUP, LLP

By: /s/ Eric A. Chase
    Eric A. Chase, Esq.
    Attorneys for Defendant