1

2

3

4

5 **NOT FOR CITATION**

6 IN THE UNITED STATES DISTRICT COURT

7

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 UNITED STATES OF AMERICA,

10      Plaintiff,                    No.  CR 09-00946 JSW

11   v.                            **ORDER GRANTING IN PART**
**AND DENYING IN PART**
12 ANDREW SAMUEL HANSON,          **MOTION TO SUPPRESS**

13      Defendants.

14 _____/

15 **INTRODUCTION**

16       This matter comes before the Court for consideration of the Motion to Suppress filed by

17 Defendant Andrew Samuel Hanson ("Hanson").  Having considered the parties' papers,

18 relevant legal authority, the record in this case, and having had the benefit of oral argument, the

19 Court HEREBY GRANTS IN PART AND DENIES IN PART Hanson's Motion to Suppress.

20 **BACKGROUND**

21       On January 27, 2009, Hanson arrived at the San Francisco International Airport ("SFO")

22 from Seoul, South Korea and was randomly selected for a secondary baggage examination.

23 (*See* Declaration of Sheryl P. Edwards ("Edwards Decl."), ¶¶ 2-3.)  According to United States

24 Customs Officer Sheryl Edwards ("Officer Edwards"), during this examination Hanson "began

25 to show signs of behavioral and physiological indicators, such as perspiring, stuttering when

26 answering questions, and asking why he was being inspected."  (*Id.*, *see also id*. Ex. 1

27 ("Incident Report").)  During the search of Hanson's luggage, Officer Edwards discovered a

28 plastic bag full of condoms and a vitamin bottle, which Hanson stated contained male-

United States District Court

For the Northern District of California

1    enhancement pills.  Hanson also advised Officer Edwards that, while in South Korea, he had

2    been teaching English to children aged 5 and older.  (*Id.*)

3          According to Officer Edwards, these facts, in conjunction with Hanson's "behavioral

4    and physiological indicators," led her to request a media examination of his laptop, a digital

5    camera with a memory card, two CD-Roms and two DVDs.[1]  During the examination of

6    Hanson's laptop, Officer Edwards "came across an image of an adolescent female, who was

7    nude and covered in mud at an unknown beach" (hereinafter "the Image").  (Incident Report at

8    p. 4.)  In her declaration, Officer Edwards expands on the description of the Image as follows:

9          The girl's body was covered in mud, facing the camera and smiling, and her
      genital area was clearly visible.  In my report, I refer to the girl as an
10     "adolescent."  By this I mean that she was older than pre-pubescent, but
      clearly younger than 18.  I made this determination based on her physical
11     characteristics, such as her under-developed breasts, lack of pubic hair, and
      narrow hips.

12

13   (Edwards Decl., ¶ 4.)

14         Officer Edwards attests that her decision to detain Hanson's laptop for a more thorough

15   forensic examination was based on the Image, although she candidly declares that, at present,

16   she cannot identify the specific image viewed on January 27, 2009.  (Edwards Decl.,

17   ¶¶ 4-5.)[2]  With the exception of Officer Edwards' general statements regarding the duration of

18   her employment and her general duties as a U.S. Customs' Officer, the Government put forth no

19   evidence that she has received any specific training or experience with respect to the

20   identification of child pornography.

21         Officer Edwards sent Hanson's laptop to the U.S. Customs and Border Protection

22   Laboratories and Scientific Services on January 28, 2009, and Justin Shey, Ph.D. ("Dr. Shey"),

23   took it into his custody.  (Declaration of Justin Shey ("Shey Decl."), ¶ 2, Ex. 1.)  On February 5,

24   2009, Dr. Shey removed the hard drive from the laptop, ran an initial scan, but did not locate

25

26        [1]     For ease of reference, the Court shall refer to this search as "the January
     search."  The digital camera, the memory card, the CD-Roms and the DVDs were returned to
27   Hanson on January 27, 2009.

28        [2]     For that reason, the Court has not reviewed the image described in Officer
     Edwards' declaration.

2

United States District Court

For the Northern District of California

1   any images of child pornography.  (*Id.*, Ex. 2 ("Worksheet Summary").)  Dr. Shey then

2   prepared a mirror image of the hard drive.  (*Id.*)  On February 6, 2009, Dr. Shey "systematically

3   checked the contents of the hard drive through a hardware writeblock for evidence of child

4   pornography," "located two folders that I believed to contain possible child pornography," and

5   reviewed all of the images in those folders.  Dr. Shey also burned the images onto a DVD.  (*Id.*,

6   ¶ 4.)

7   　　　　On or about February 13, 2009, Officer Edwards and other officers reviewed the images

8   on the DVD and the laptop, and determined that the laptop should be seized.  (Incident Report

9   at 5.)[3]  A subsequent forensic analysis of the laptop, conducted in June 2009, revealed over

10  1,000 images of child pornography.[4]  It is undisputed that each of these three searches was

11  conducted without a warrant.

12  　　　　On September 28, 2009, Hanson was charged with one count of Transportation of Child

13  Pornography, in violation of 18 U.S.C. § 2252(a)(1), and one count of Possession of Child

14  Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

15  **ANALYSIS**

16  　　　　"The right of the people to be secure in their persons, houses, papers, and effects, against

17  unreasonable searches and seizures shall not be violated...."  U.S. Const. amend IV.  In general,

18  a search conducted without a warrant, as is the case here, is considered unreasonable, unless it

19  is justified by an exception.

20  　　**1.　　The January Search Which Led to The Discovery of the Image Did Not**
     　　　　**Destroy Hanson's Legitimate Expectation of Privacy in the Contents of His**
21  　　　　**Laptop.**

22  　　　　One exception to the warrant requirement is a search conducted at the international

23  border, which is by its "very nature reasonable under the Fourth Amendment, and require[s]

24  neither a warrant, probable cause, nor even articulable suspicion."  *United States v. Alfonso*, 759

25  F.2d 728, 733-34 (9th Cir. 1985) (citations omitted)); *see also United States v. Romm*, 455 F.3d

26  990, 996 (9th Cir. 2006).  "Searches of international passengers at American airports are

27  _____

28  　　　[3]　　　The Court shall refer to this search as "the February search."

　　　[4]　　　The Court shall refer to this search as "the June search."

3

United States District Court

For the Northern District of California

1   considered border searches because they occur at the 'functional equivalent of a border.'"

2   *United States v. Arnold*, 533 F.3d 1003, 1006 (9th Cir. 2009) (quoting *Almeida-Sanchez v.*

3   *United States*, 413 U.S. 266, 273 (1973)).

4        In *Arnold*, the defendant arrived at Los Angeles International Airport from the

5   Phillipines, and law enforcement agents searched his computer.  During the search, the agents

6   found numerous images depicting what they believed to be child pornography.  Therefore, the

7   agents seized the computer and storage devices, released the defendant, and obtained a warrant

8   to conduct a further search.  *Arnold*, 533 F.3d at 1005.  The defendant moved to suppress the

9   evidence discovered during the search at the airport.  The district court granted the motion on

10  the basis that the search was not supported by reasonable suspicion.  On appeal, Arnold

11  defended the district court's decision and argued that a laptop was fundamentally different from

12  traditional closed containers and, thus, a border search of a computer needed to be justified by

13  reasonable suspicion  *Id.* at 1006.  The Ninth Circuit rejected his argument and concluded that a

14  computer is not different from any other type of closed container and can be searched without

15  probable cause or reasonable suspicion at the border.  *Id.* at 1007-1008; *see also id.* (rejecting

16  argument that search was conducted in "particularly offensive manner" merely because of the

17  storage capacity of the container).

18       Hanson concedes that, under *Arnold*, the January search was a valid border search, and

19  the validity of that search is not at issue. (*See* Mot. at 5:23-26.)  The Government argues that

20  once Officer Edwards discovered the Image, she had probable cause, or at least reasonable

21  suspicion, to *seize* the laptop, and Hanson ceased to have any legitimate expectation of privacy

22  in its contents, thereby justifying the subsequent warrantless searches. (*See, e.g.,* Opp. Br. at

23  3:27-4:2.)  It is well-established that "a 'search' occurs when an expectation of privacy that

24  society is prepared to consider reasonable is infringed."  *United States v. Jacobsen*, 466 U.S.

25  109, 113 (1984).  The Government argues that because the Image qualifies as contraband, the

26  searches conducted in February and June could not have frustrated an expectation of privacy

27  that society would consider reasonable

28

4

**United States District Court**
For the Northern District of California

1    The Court disagrees. The fact that Officer Edwards discovered one questionable image

2    on Hanson's laptop does not lead to the conclusion that the laptop "contained contraband and

3    little else." *Jacobsen*, 466 U.S. at 121. Thus, this is not a situation where the subsequent

4    searches of Hanson's computer could only have revealed the presence of contraband "and no

5    other arguably 'private' fact." *Id.* at 123; *see also Illinois v. Caballes*, 543 U.S. 405, 408 (2005)

6    (upholding canine sniff of vehicle because it could only disclose presence or absence of

7    contraband and reiterating previous holdings of court that "governmental conduct that *only*

8    reveals the possession of contraband 'compromises no legitimate privacy interest'" (quoting

9    *Jacobsen*, 466 U.S. at 123) (emphasis in original). Therefore, the Court finds the Government's

10   reliance on *Jacobsen* and *Caballes* to be inapposite.

11   Moreover, this Court does not read the Ninth Circuit's decision in *Arnold* to overturn the

12   principle that, in general, "[a] container which can support a reasonable expectation of privacy

13   may not be searched, even on probable cause, without a warrant." *Jacobsen*, 466 U.S. 119 n.17

14   (citing cases); *see also United States v. Walter*, 447 U.S. 649, 654 (1980) ("an officer's

15   authority to possess a package is distinct from his authority to examine its contents"). Although

16   Officer Edwards' discovery of the Image may have provided her with a reason to believe that

17   Hanson's laptop could contain other images that would qualify as contraband, the Court rejects

18   the Government's argument that the January search of Hanson's laptop frustrated his reasonable

19   expectation of privacy its contents and rendered it unnecessary to obtain a warrant before

20   conducting any further searches. Therefore, unless the February and June searches can be

21   considered border searches, or unless some other recognized exception to the warrant

22   requirement exists, Hanson's motion should be granted.

23   **3.      The February Search Was an Extended Border Search Supported by
             Reasonable Suspicion.**

24

25   The Government argues that the February search was justified as an extended border

26   search supported by reasonable suspicion. "The 'extended border' doctrine ... permits the

27   Government to conduct border searches some time after the border has been crossed." *United*

28   *States v. Caicedo-Guarnizo*, 723 F.2d 1420, 1422 (9th Cir. 1984); *see also United States v.*

United States District Court
For the Northern District of California

1  *Cotterman*, 2009 WL 465028, at * 5 (D. Ariz. Feb. 24, 2009).  In contrast to a search conducted

2  at the border, or its functional equivalent, an extended border search must be supported by

3  "'reasonable suspicion' that the subject of the search was involved in criminal activity, rather

4  than simply mere suspicion or no suspicion." *Alfonso*, 759 F.2d at 734.  In order to determine

5  whether the search was supported by reasonable suspicion, the Court examines the totality of

6  the circumstances, such as the time and distance elapsed, whether there was a lapse in

7  surveillance, and the diligence of law enforcement. *Id.* at 735 (citing *Alexander v. United*

8  *States*, 362 F.2d 379, 382 (9th Cir. 1966)); *see also Cotterman*, 2009 WL 465028, at *6.

9       In *Cotterman*, the defendant and his wife arrived at the border, and the border inspectors

10  discovered that he had a previous conviction for "child sex crimes.  They therefore subjected

11  him subjected to a secondary inspection, during which agents examined his laptop, learned that

12  certain files were password protected, but did not locate any contraband. *Cotterman*, 2009 WL

13  465028, at *2.  Although the defendant offered to assist agents with the password protected

14  files, they declined, seized the laptop, took it approximately 170 miles from the border, and

15  searched it for two days before they located images of child pornography. *Id.*

16       Because the agents did not find contraband while the laptop was located at the border

17  and, in light of the time and distance that elapsed before the search continued, the court

18  concluded that the search should be analyzed as an extended border search. *Id.* at *4.  Given

19  the passage of time between the January and February searches and the fact that the February

20  search was not conduct at the border, or its functional equivalent, the Court concludes that the

21  February search should be analyzed under the extended border search doctrine and must be

22  justified by reasonable suspicion.[5] *See also United States v. Stewart*, 2010 WL 2089355, at *3-

23  4 (E.D. Mich. May 24, 2010) (analyzing search of laptop, following an initial search at border,

24  as an extended border search).

25       The *Cotterman* court concluded that the agents did not have reasonable suspicion to

26  seize and search the defendant's laptop, on the basis that the defendant's prior conviction and

27

28       [5]     The Government has not argued that the Customs' laboratory is the functional
equivalent of the border.

the fact that files were password protected did not give rise to a reasonable suspicion that the laptop contained contraband. *Id.* at \*7. In the *Stewart* case, as in this case, the defendant's laptop was seized by agents following a border search, but only after they discovered images that they believed might constitute child pornography. *Stewart*, 2010 WL 2089355, at \*1-\*2.

The Court concludes that the facts of this case are more analogous to *Stewart* than to *Cotterman*. As was the case in *Stewart,* Officer Edwards discovered the Image, which she believed constituted contraband, during the initial search of Hanson's laptop. Although the subsequent search in the *Stewart* case was conducted approximately twenty-four hours after the defendant crossed the border, the Court does not find the time lapse in this case to be unreasonable. "Reasonable suspicion is more than mere suspicion, but less than probable cause." *Cotterman*, 2009 WL 465028*,* at \*6. When the Court examines the totality of the circumstances, including Officer Edwards' description of the Image, her observations that Hanson appeared nervous, the discovery of the condoms and the male-enhancement pills, and Hanson's statement that he had been working with children, the Court concludes that the Government has met its burden to show the February search was supported by reasonable suspicion. Accordingly, Hanson's motion is DENIED IN PART on this basis.

**2.      The June Search Required a Warrant**.

In its sur-reply, the Government argues that Customs agents did not require a warrant to conduct the June search, because Hanson's laptop never cleared customs. The Court finds this argument unpersuasive. In *Cotterman*, the court noted that "[a]t some point, the discrepancy in time and distance" between the search and the border, "will become so great that it is no longer an extended border search, thus requiring probable cause and a warrant. Again, there is no bright line test, but an examination of the totality of circumstances, including, time, distance, and law enforcement efforts is required." *Cotterman*, 2009 WL 456028, \*6 (citing *Alfonso*, 759 F.2d at 736; *United States v. Sahanaja*, 430 F.3d 1049, 1054-55 (9th Cir. 2005)). At the hearing, the Government conceded that the June search was neither a border search nor an extended border search. Hanson, in turn, conceded that if the February search was valid, it

1  provided Customs with probable cause to seize his laptop.  Hanson contends, however, that the

2  June search still required a warrant.  The Court agrees.

3       For the reasons set forth above regarding the January search, the Court concludes that

4  the discovery of the additional images in February did not so frustrate Hanson's reasonable

5  expectation of privacy in his laptop that the warrantless search in June was justified.  The

6  Government also argues that because Officer Edwards properly seized the laptop, and because

7  the laptop remained in law enforcement custody, she was entitled to conduct a more thorough

8  search at a later time.  (Sur-Reply at 2:3-3:3.)  However, the cases on which the Government

9  relies for this argument address the right to conduct a more thorough search of a container as a

10  search incident to a valid arrest, another recognized exception to the warrant requirement.  *See*

11  *United States v. Turner*, 28 F.3d 981 (9th Cir. 1994); *United States v. Johnson*, 820 F.2d 1065

12  (9th Cir. 1987); *United States v. Burnette*, 698 F.2d 1038 (9th Cir. 1983); *United States v.*

13  *Sanchez*, 337 Fed. Appx. 641 (9th Cir. 2009).  Hanson was not arrested on January 27, 2009,

14  and for that reason the Court finds the Government's reliance on the "search incident to a valid

15  arrest" line of cases to be inapposite.  Accordingly, because the Court concludes that June

16  search required a warrant, and because it is undisputed that the search was conducted without a

17  warrant, Hanson's motion is GRANTED IN PART on this basis.

18                            **CONCLUSION**

19       For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

20  Hanson's motion to suppress.  The parties are HEREBY ORDERED to appear on June 17,

21  2010, at 2:30 p.m., for purposes of setting pretrial conference and trial dates.  If the parties

22  believe that the time between the date the Court issued this Order and the next status conference

23  should be excluded, they should submit a stipulation and proposed order setting forth the basis

24  on which time should be excluded.

25       **IT IS SO ORDERED.**

26  Dated:   June 2, 2010

                                                 _____

27                              JEFFREY S. WHITE
                            UNITED STATES DISTRICT JUDGE

28